**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| **In re RETEK INC.** <br> **SECURITIES LITIGATION** | Civil No. 02-4209 (JRT/SRN) |
| This Document Relates To: <br><br> ALL ACTIONS | **MEMORANDUM OPINION AND ORDER ON MOTION FOR CLASS CERTIFICATION** |

David R. Stickney, Jerald D. Bien-Willner, **BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**, 12481 High Bluff Drive, Suite 300, San Diego, CA 92130; Gregg M. Fishbein, **LOCKRIDGE GRINDAL NAUEN PLLP**, 100 Washington Avenue South, Suite 2200, Minneapolis, MN 55401-2179, for lead plaintiff.

Allen W. Hinderaker, **MERCHANT & GOULD PC**, 80 South Eighth Street, Suite 3200, Minneapolis, MN 55402; James E. Burns, Jr. and Kenneth P. Herzinger, **ORRICK HERRINGTON & SUTCLIFFE**, 405 Howard Street, San Francisco, CA 94105, for defendants.

This is a class action lawsuit alleging securities fraud against Retek Inc. and five individuals alleged to be insiders of Retek. Lead plaintiffs were appointed pursuant to section 21D of the Securities Exchange Act, 15 U.S.C. § 78u-4, for the persons and entities that purchased stock in Retek's corporation between July 19, 2001 and July 8, 2002 (the "class period"). The lead plaintiffs are the Louisiana Municipal Police Employees' Retirement System ("MPERS") and Steven B. Paradis. This matter is now before the Court

on MPERS's motion for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure. For the reasons discussed below, lead plaintiff's motion is granted.

**BACKGROUND**

Retek is a company that develops and markets supply chain software to retail companies. Plaintiffs allege that beginning on July 19, 2001, defendants made a series of materially false and misleading statements that artificially inflated the value of Retek's stock. On July 8, 2002, the last day of the class period, Retek issued a press release announcing that it had failed to close more than $30 million worth of licensing contracts it had anticipated would close during the second quarter of 2002, and accordingly adjusted downward several predictions it had made for the following quarter. The next day, Retek's stock fell from $17.31 to $6.46 per share.

On March 7, 2005, the Court granted defendants' motion to dismiss with respect to plaintiff's negative trend allegations and denied it in all other respects. *In re Retek*, 2005 WL 1430296 (D. Minn. Mar. 7, 2005). On October 21, 2005, the Court denied defendants' motion for judgment on the pleadings. *In re Retek*, 2005 WL 3059566 (D. Minn. Oct. 21, 2005). MPERS now moves this Court for an order certifying the class,[1] certifying MPERS as class representative, and appointing the law firms of Bernstein Litowitz Berger & Grossmann LLP ("BLBG") and Lerach Coughlin Stoia Geller Rudman & Robbins LLP

---

[1] The class includes: "All those who purchased or acquired the securities of Retek between July 19, 2001 and July 8, 2002 ("the Class"), and who were damaged thereby. Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest."

("Lerach Coughlin") as lead class counsel and the law firm of Lockridge Grindal Nauen P.L.L.P. ("Lockridge Grindal") as liaison counsel for the class. In its response, defendants informally move to strike the expert declaration of Jane Nettesheim.

**ANALYSIS**

Federal Rule of Civil Procedure 23 establishes a two-step analysis to determine whether class certification is appropriate. First, plaintiffs must satisfy the four prerequisites of Federal Rule Civil Procedure 23(a). Second, the action must satisfy at least one of three subdivisions of Federal Rule Civil Procedure 23(b). District courts have broad discretion to decide whether to certify a class under Rule 23. *Lockwood Motors, Inc. v. Gen. Motors Corp.*, 162 F.R.D. 569, 573 (D. Minn. 1995).

**I.     Requirements of Federal Rule of Civil Procedure 23(a)**

A member of a class may sue as a representative party on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims of the representative parties are typical of the claims of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. Proc. 23(a).

**A.     Numerosity**

The parties do not dispute that the class is so numerous that joinder of all members is impracticable. *See* Fed. R. Civ. P. 23(a)(1). Retek had approximately 48.7 million shares of common stock issued and outstanding during the class period and the average weekly

volume of Retek shares traded exceeded 5,800,000. At least 223 institutional investors reported having Retek shares during the class period, and including the individual investors, there are potentially tens of thousands of class members.

### B. Common Questions of Law or Fact

The parties also do not dispute that there are questions of law or fact common to the class. *See* Fed. R. Civ. P. 23(a)(2). These common questions include whether statements made by defendants misrepresented material facts about Retek's financial condition and whether securities law were violated by defendants' acts.

### C. Typicality

Rule 23(a)(3) requires a "demonstration that there are other members of the class who have the same or similar grievances as the plaintiff." *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir. 1977). The burden is "fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995).

Lead plaintiff asserts that defendants violated Sections 10(b) and 20(a) of the Exchange Act, as well as an implementing regulation, Rule 10b-5, and that claims of absent class members are based upon the same legal theories and will be proven by the same evidence. Defendants do not dispute that the claims overlap, but defendants argue that lead plaintiff cannot satisfy the typicality requirement because it is vulnerable to at least two unique defenses.

First, defendants argue that MPERS cannot assert the "fraud on the market" theory of reliance[2] because neither it nor its investment advisor relied on the integrity of the market price for Retek stock. Specifically, defendants argue that MPERS's investment advisor used sophisticated financial analyses and purchased Retek stock precisely because its valuation differed from the market price. MPERS's methods of making investment decisions seem representative of methods used by many other investors, which reflect an evaluation of the publicly available information about Retek. *See In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 281-82 (S.D.N.Y. 2003). "Making careful investment decisions does not disqualify an investor from representing a class of defrauded investors or from relying on the presumption of reliance that is ordinarily available . . . in securities fraud actions." *Id.*

Second, defendants argue that MPERS cannot demonstrate the justifiable reliance required for a misrepresentation claim under Rule 10b-5 because it used a sophisticated investment firm. Lead plaintiff would only need to demonstrate justifiable reliance, however, if defendants successfully rebut the presumption of reliance based on the fraud on the market theory. *See, e.g.*, *Kalodner v. Michaels Stores, Inc.*, 172 F.R.D. 200, 205 (N.D. Tex. 1997). As discussed below, the Court finds that lead plaintiff has presented sufficient evidence to go forward with the fraud on the market theory.

---

[2] The fraud on the market theory permits a plaintiff to establish a rebuttable presumption of reliance on material misrepresentations based upon the premise that the market price of shares traded on well-developed markets reflects all publicly available information, including any material misrepresentations. *Appletree Square I, Ltd. Pshp. v. W.R. Grace & Co.*, 29 F.3d 1283, 1287 (8th Cir. 1994) (citing *Basic Inc. v. Levinson*, 485 U.S. 224, 246 (1988)). When a purchaser buys stock at market price, he necessarily relies on any material misrepresentations incorporated into the price. *Id.*

**D.     Adequacy**

The focus of the adequacy requirement of Rule 23(a)(4) is whether: (1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel. *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 562-563 (8th Cir. 1982). Defendants do not specifically dispute that lead plaintiff has common interests with the rest of the class, but defendants make three arguments in an effort to show that lead plaintiff is an inadequate representative.

First, defendants argue that MPERS is inadequate because it gave its investment firm complete discretionary authority over investments. *See Fry v. UAL Corp.*, 136 F.R.D. 626, 635-36 (N.D. Ill. 1991) ("[A] certain minimal level of participation by the plaintiff in the relevant stock transaction must be demonstrated."). The Court finds that lead plaintiff retained some control over its investments through its supervision of the investment firm. Specifically, it systematically reviews written and oral reports and presentations. Further, it hired an independent firm to monitor the performance of its investments.

Second, defendants argue that lead plaintiff has no incentive to vigorously pursue claims of class members that arise from events after January 9, 2002 because MPERS did not purchase any stock after that date. The Court is satisfied that lead plaintiff is committed to actively prosecuting all the claims it brought against defendants, including those claims based on an alleged misrepresentation that occurred in April 2002. MPERS has successfully served as class representative in other actions, and lead plaintiff has retained competent counsel experienced in class and securities litigation. MPERS retained the law firm of

BLBG.  It and co-lead counsel Lerach Coughlin and liaison class counsel Lockridge Grindal have proven track records in the prosecution of complex class actions within this judicial district and elsewhere.

Third, defendants argue that lead plaintiff is an inadequate class representative because MPERS and its Board of Trustees are defendants in a civil lawsuit and are being investigated by the Louisiana State Attorney General.  This lawsuit alleges that the Board breached its fiduciary duties by improperly investing MPERS's asserts.  Because this investigation was self-initiated by the Board of Trustees, the Court does not find that it implicates MPERS's ability to act as a fiduciary.

## II.     Requirements of Federal Rule of Civil Procedure 23(b)

Lead plaintiff seeks certification pursuant to Rule 23(b)(3).  This rule has two primary requirements: (1) that common questions of law or fact predominate over any questions affecting only individual class members; and (2) that a class action is superior to other available methods of adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3).

### A.     Predominance

The Court has already determined that common questions of law and fact exist in this case, but it must now determine whether these common issues predominate over those unique to individual class members. Defendants argue that individual issues of damages and reliance will predominate.

Defendants first argue that differences in timing of the various alleged misstatements will cause conflicts between class members because the damages that they recover will be

based on when they purchased or sold.  Courts frequently grant class certification despite individual differences in class members' damages.  *See, e.g.*, *In re Select Comfort Corp. Sec. Litig.*, 202 F.R.D. 598, 610 (D. Minn. 2001).  There is no reason to believe that the timing of the various alleged misstatements will make maintenance of a class action unmanageable here.

Courts often hold that under the "fraud on the market" theory, individual questions of reliance do not predominate over common questions.  *Id.*  To be entitled to a presumption of reliance through the fraud on the market theory, the market for the security at issue must be "efficient."  *See Basic, Inc. v. Levinson*, 485 U.S. 224, 248 n.27 (1988).  An efficient market is one which material information on the company is widely available and is reflected in the value of the security.

There are several factors that courts use as indicia of market efficiency.  *See Cammer v. Bloom*, 711 F. Supp. 1264, 1286 (D.N.J. 1989).  It is undisputed that Retek securities satisfy most of the *Cammer* factors.  First, Retek has a large weekly trading volume, which is greater than NASDAQ average.[3]  *See id.*  Second, Retek stock is heavily covered by securities analysts; it was the subject of 244 analyst reports during the class period.  *See id.*  Third, it has as many as 44 market makers, which ensures completion of the market mechanism by reacting swiftly to company news by buying or selling stock and driving it to a changed price level.  *See id.* at 1287.  Fourth, Retek is entitled to file an S-3 Registration

---

[3] Some courts assume market efficiency based solely on the fact that the security trades on NASDAQ, which Retek does.  *See, e.g., In re Tricord Sys. Sec. Litig.*, 1996 U.S. Dist. LEXIS 20943 (D. Minn. 1996) ("Here, Tricord stock was traded on the NASDAQ exchange – a nationwide, developed, and open market, from which 'efficiency' can easily be inferred.").

Statement in connection with public offerings, which reflects a large number of shares traded. *See id.*

Defendants focus on the final *Cammer* factor: whether there are empirical facts showing a cause and effect relationship between unexpected corporate events or financial releases and an immediate response in the stock price. *See id.* Specifically, defendants criticize lead plaintiff's expert, Jane Nettesheim. Defendants argue that Nettesheim improperly concluded that the market is efficient because she did not conduct a proper market evaluation.[4] Even assuming that her declaration is unpersuasive, empirical evidence is not necessary to demonstrate market efficiency.

Lead plaintiff has alleged facts that tend to show that the fraud on the market theory is available to plaintiffs. Proof of market efficiency is a matter for trial. *See Basic*, 485 U.S. at 249 n.29. If the theory is not proven and it appears that it will be difficult to sustain the class in the long run, the Court can decertify the class at that time. Given the availability of the fraud on the market theory, the Court finds that common issues will predominate.

### B.     Superiority

The Court believes that a class action is superior to other available methods of adjudicating this case. Given the prohibitive costs required for the prosecution of this sophisticated securities fraud case, very few class members could prosecute it on an

---

[4] In a footnote in the briefing, defendants move to strike the expert declaration of Nettesheim as unreliable under Federal Rule of Evidence 702. Assuming that this informal motion is properly before the Court, the Court denies it. Defendants' concerns about the expert's methodology go to the persuasiveness of her declaration, not its admissibility. *See Hose v. Chicago Northwestern Transp. Co.*, 70 F.3d 968, 974 (8th Cir. 1995).

individual basis. *See In re Select Comfort Corp. Sec. Litig.*, 202 F.R.D. 598, 611 (D. Minn. 2001) (explaining that in securities fraud cases the claims of individual investors are often too small to warrant separate lawsuits).

In conclusion, the Court finds that the proposed class meets the threshold requirements of Rule 23(a). Furthermore, the Court finds that common issues of law and fact predominate and that a class action is likely the superior way to adjudicate the claims. Accordingly, the Court certifies this action as a class action on behalf of the class defined above. The Court hereby finds and concludes pursuant to Rule 23 that lead plaintiff MPERS is an adequate class representative and certifies it as representative for the class. The Court further finds and concludes pursuant to Rule 23(g) that the law firms of BLBG, Lerach Coughlin, and Lockridge Grindal will fairly and adequately represent the interests of the class and appoints BLBG and Lerach Coughlin as lead class counsel and Lockridge Grindal as liaison counsel for the class.

### ORDER

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that lead plaintiff's Motion for Class Certification [Docket No. 110] is **GRANTED**.

DATED: March 22, 2006             s/ John R. Tunheim  
at Minneapolis, Minnesota.            JOHN R. TUNHEIM  
                                                       United States District Judge